UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CIVIL ACTION NO:

_____

| | |
|---|---|
| _____ ) | |
| DARRIN STEWART, ) | |
|       Plaintiff ) | **JURY TRIAL** |
| ) | **DEMANDED** |
| v. ) | |
| ) | |
| KHAITE, LLC. ) | |
|       Defendant ) | |
| _____ ) | |

## <u>COMPLAINT AND JURY DEMAND</u>

## <u>PARTIES</u>

1.      The plaintiff, Darrin Stewart ("Mr. Stewart" or "Plaintiff"), is a male resident of the State of New York residing in Brooklyn, New York.

2.      Defendant Khaite, LLC (the "Company" or "Defendant") is a private company incorporated in Delaware with its principal offices located at 580 Broadway, 3rd Floor, New York, NY 10012.

## <u>JURISDICTION AND VENUE</u>

3.      This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Mr. Stewart has brought claims pursuant to the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 1201 et seq., the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. §§1981. The court may exercise supplemental jurisdiction over Mr. Stewart's city and state law claims. 28 U.S.C. §1367.

4.      Venue is appropriate in the Eastern District of New York as Mr. Stewart resides within the Eastern District of New York.

5.      This court has jurisdiction over the Company because the Company has purposefully availed itself of New York law by operating a business in New York (including the location at 1882 Atlantic Ave., Brooklyn, NY which served as the worksite of Mr. Stewart during his employment), transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Mr. Stewart) in New York.  Indeed, the Plaintiff was employed by the Company in the State of New York, was managed by the Company in the State of New York, and was terminated by the Company in the State of New York. The Company has registered with the State of New York as a foreign corporation doing business in the State of New York.

## STATEMENT OF FACTS

6.      Mr. Stewart is a gay man and uses the gender pronouns "he" and "they."

7.      On or around January 17, 2023, Mr. Stewart was hired by Khaite LLC (the "Company") as a senior client advisor working in the borough of Manhattan, New York City.

8.      At all relevant times, the Company employed 15 or more employees for 15 or more Calendar weeks within the last 12 months.

9.      As such, the Company is an employer under the Americans with Disabilities Act ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

10.     In fact, at all relevant times, the Company employed 50 or more employees during 20 or more calendar weeks during the current or preceding calendar year.

11.     As such, at all relevant times, the Company was an employer under the Family and Medical Leave Act ("FMLA").

12.    At all relevant times, Mr. Stewart was a qualified employee with a satisfactory performance history with the Company.

13.    Prior to his employment, Mr. Stewart was diagnosed with ulcerative colitis, which is an autoimmune disease that causes inflammation and ulcers in his large intestine.

14.    Mr. Stewart's ulcerative colitis is an impairment which substantially limits one or more of his major life activities, including, but not limited to, eating, digesting, going to the bathroom, and eliminating bodily waste. Mr. Stewart's ulcerative colitis is an impairment which substantially limits the operation of a major bodily function, including, but not limited to, his digestive system functions, bowel functions, and immune system. Accordingly, at all relevant times Mr. Stewart was (and still is) disabled under federal law, the NYSHRL, and the NYCHRL.

15.    Additionally, prior to Mr. Stewart's employment, he was diagnosed with major depressive disorder.

16.    Mr. Stewart's major depressive disorder is an impairment which substantially limits one or more of Mr. Stewart's major life activities, including, but not limited to, regulating his mood, sleeping, and caring for himself. Mr. Stewart's major depressive disorder is an impairment which substantially limits the operation of a major bodily function, including, but not limited to, Mr. Stewart's brain and neurological functions. Accordingly, at all relevant times Mr. Stewart was (and still is) disabled under federal law, the NYSHRL, and the NYCHRL.

17.    Importantly, Mr. Stewart's ulcerative colitis often caused extreme pain and discomfort.  As such, during flare ups of his ulcerative colitis, Mr. Stewart often experienced flare ups of his major depressive disorder as well.

18.     Shortly after Mr. Stewart started at the Company, he disclosed his disabilities (including his ulcerative colitis and major depressive disorder) to his supervisor at the time, Gina (last name unknown, "Gina"), a store director for the Company.

19.     Upon information and belief, Gina was not disabled.  Upon information and belief, the Company (at all times relevant to this complaint) did not regard Gina as disabled and/or did not believe she was disabled.

20.     Around this same time, Mr. Stewart disclosed his disabilities (including his ulcerative colitis and major depressive disorder) to Crystal Mangal ("Mangal"), an HR representative for the Company.

21.     Upon information and belief, Mangal is not disabled. Upon information and belief, the Company (at all times relevant to this complaint) did not regard Mangal as disabled and/or did not believe she was disabled.

22.     At that time, Mr. Stewart requested the reasonable disability-related accommodation of intermittent medical leave when he experienced flare-ups of his disabilities.

23.     Mangal accepted Mr. Stewart's request at that time.

24.     Mr. Stewart was also open about his sexuality and gender identity.  Indeed, it was obvious that Mr. Stewart did not present in a typical masculine/hetero-normal way and did not conform to common societal stereotypes about male gender-norms and masculinity.

25.     Throughout Mr. Stewart's employment he was required to work off the clock without receiving pay for all hours worked.

26.     Mr. Stewart worked a minimum of 5 hours a week off the clock, and periodically more (for which he was not paid).

27.	As Mr. Stewart worked at least 40 hours per week, the extra 5 or more "off the clock" hours should have been paid at a time and a half overtime rate.

28.	In or around February 2023, Gina left the Company and Peter Pham ("Pham") became the Store Director for the Company and Mr. Stewart's new direct supervisor.

29.	Upon information and belief, Pham is not disabled. Upon information and belief, the Company did not regard Pham as disabled and/or did not believe he was disabled.

30.	Shortly after Pham started, Mr. Stewart disclosed his disabilities (including his ulcerative colitis and major depressive disorder) to Pham.  Pham appeared annoyed by this disclosure.

31.	Mr. Stewart also reported to Octavia Rosario ("Rosario"), a regional director for the Company.

32.	Upon information and belief, Rosario is not disabled. Upon information and belief, the Company (at all times relevant to the complaint) did not regard Rosario as disabled and/or did not believe she was disabled

33.	In or around January 2024, Rosario wrote Mr. Stewart up out of the blue for having hair that was dyed a natural red shade.

34.	Notably, Company policy prohibited employees from dying their hair neon colors (or unnatural colors).

35.	However, many employees still opted to dye their hair natural colors (blonde, brown, red, and highlights).

36.	Importantly, Mr. Stewart's hair was dyed a natural shade of red, and therefore this coloring was not against any Company policy.

37.     Indeed, other employees had hair that was colored with natural shades and were not similarly reprimanded, let alone written up, for their conduct.

38.     Notably, many of the women who worked with Mr. Stewart had dyed hair (including hair dyed "unnatural" shades).

39.     It was clear that the Company was holding Mr. Stewart to different, more strict standards than his other, non-disabled, female, and/or non-gay coworkers. However, despite the fact that Mr. Stewart disputed the legitimacy of this write-up, he complied with the warning and removed his hair dye, so his hair was his natural hair color.

40.     Rosario and other members of Defendant's management did not raise any concerns about Mr. Stewart's hair after he removed the hair dye, and thus it was indicated that the issue was resolved.

41.     In or around January and February 2024, Mr. Stewart began to experience frequent flare ups of his ulcerative colitis disability and was experiencing severe abdominal pain, diarrhea and vomiting.

42.     Notably, at all relevant times, the Company employed 50 or more employees within a 75-mile radius of where Mr. Stewart worked.

43.     Furthermore, Mr. Stewart was employed by the Company for at least 12 calendar months and had worked for at least 1,250 hours during the preceding 12 calendar months.

44.     As such, Mr. Stewart was a qualified employee under the FMLA.

45.     Mr. Stewart's ulcerative colitis and major depressive disorder each served (both individually and collectively) as serious medical conditions causing periods of incapacity and continuing treatment and served as a legitimate basis for leave under the FMLA.

46.     As such, Mr. Stewart's request was a request for leave protected under the FMLA, as well as for a disability-related accommodation.

47.     Indeed, during this period of time, Mr. Stewart utilized his previously approved disability-related accommodation of medical leave from work for around one day at a time on around four separate occasions in order to manage the flare up of his disability.

48.     On these four specific dates, Mr. Stewart contacted Pham as soon as reasonably possibly prior to the start of his shift. Mr. Stewart informed him that he (Mr. Stewart) was experiencing a flare up of disability-related symptoms and requested to utilize his previously approved disability-related accommodation of intermittent leave from work for the day.

49.     Pham approved Mr. Stewart's requests, which were also leave time protected under the FMLA.

50.     In or around February 2024, Pham left the Company and Rosario became Mr. Stewart's new direct supervisor.

51.     Rosario continued to insist that Mr. Stewart work off the clock and be available to his clients 24/7.

52.     This resulted in Mr. Stewart continuing to work a minimum of 5 hours a week off the clock, and often more (for which he was not paid).

53.     Additionally, as Mr. Stewart worked at least 40 hours per week, the extra 5 hours should have been paid at a time and a half overtime rate.

54.     On or around February 15, 2024, Mr. Stewart experienced an extreme flare up of his disabilities.

55.     Indeed, Mr. Stewart was in extreme discomfort and was experiencing severe pain in his abdomen along with diarrhea and vomiting.

56.     As such, Mr. Stewart contacted Rosario, disclosed his ulcerative colitis disability, and requested a disability-related accommodation of medical leave from work for around one day in order to manage the symptoms of his disability.

57.     Mr. Stewart's request was a request for leave protected under the FMLA, as well as for a disability-related accommodation

58.     Indeed, Mr. Stewart informed Rosario that he had a previously approved, disability related accommodation which allowed him to take time off, as necessary, to manage the symptoms of his disabilities.

59.     Rosario appeared visibly annoyed, but did not indicate Mr. Stewart could not take the time off.

60.     Rosario made a number of discriminatory comments to Mr. Stewart about his disability.

61.     Mr. Stewart raised protected concerns to Rosario that her comments were inappropriate and discriminatory.

62.     Rosario and others and the Company also routinely discriminated against and harassed Mr. Stewart due to his appearance and the way he dressed.

63.     Indeed, Mr. Stewart does not present in a traditional masculine manner and routinely wore items that are more traditionally associated with women (such as earrings), had long hair, and often wore makeup (including nail polish and blush).

64.     Rosario and others made frequent discriminatory comments about Mr. Stewart's more feminine appearance.

65.     Additionally, Defendant forbid Mr. Stewart from wearing nail polish (insisting that he come in with bare nails) and blush or makeup of any kind.

66.    By contrast the female employees were allowed to (and in fact encouraged) to wear nail polish and makeup.

67.    These comments and prohibitions were directly related to Mr. Stewarts sexual orientation (gay), gender identity, and sex.

68.    Mr. Stewart raised protected concerns about how these comments (about his feminine appearance) were discriminatory based off his sex, sexual orientation, and gender identity, but they continued unabated.

69.    Mr. Stewart likewise protested how it was unfair that women were allowed to wear nail polish and makeup, but he was forbidden to but the prohibition remained in place.

70.    On or around February 15, 2024, Mr. Stewart's physician recommended that he take a disability-related medical leave from work for approximately two weeks.

71.    Indeed, due to Mr. Stewart's recent flare ups of his ulcerative colitis disability, Mr. Stewart also experienced severe feelings of hopelessness which caused a flare up of his major depressive disorder disability. Thus, based on these flare ups of symptoms due to both his ulcerative colitis and the major depressive disorder, Mr. Stewart's physician recommended a medical leave of approximately two weeks for treatment and recovery.

72.    As such, on or around that same day, based on Mr. Stewart's doctor's recommendation, Mr. Stewart contacted Rosario, disclosed his depression and reiterated the fact he had ulcerative colitis, and requested the reasonable disability-related accommodation of a continuous medical leave from work for around two weeks (until on or around February 29, 2024) in order to manage the symptoms of his disabilities.

73.    Mr. Stewart's request was a request for leave protected under the FMLA, as well as for a disability-related accommodation.

74.     Rosario again appeared annoyed, but told Mr. Stewart he could take the time off.

75.     Accordingly, Ms. Stewart commenced his disability-related leave, which was protected under the FMLA.

76.     On or around February 24, 2024, Mr. Stewart's physician informed him that he could return to work on or around February 28, 2024.

77.     As such, on or around that same day, Mr. Stewart contacted Rosario and informed her of his return-to-work date based on his doctor's recommendation.

78.     Mr. Stewart further provided a medical note from his doctor confirming his ability to return to work.

79.     Ultimately, Mr. Stewart was scheduled by the Company to return to work for a shift starting on or around March 1, 2024.

80.     On or around March 1, 2024, Mr. Stewart returned to work as scheduled.

81.     Immediately upon arriving to work, Rosario and Hasna Yayahoui ("Yayahoui"), a department manager for the Company, called a department meeting.

82.     Upon information and belief, Yayahoui is not disabled. Upon information and belief, the Company (at all times relevant to this complaint) did not regard Yayahoui as disabled and/or did not believe he was disabled.

83.     Due to Mr. Stewart's disability-related accommodation of protected leave, he had missed a sales goal the previous month, although this had obviously not been his fault and had been caused by his taking an FMLA protected leave as a disability accommodation.  Hence, the Company should not have considered this sales goal to be missed, since Mr. Stewart should have been exempted from the sales goal due to his protected leave.

84.  Yayahoui and Rosario singled Mr. Stewart out in this meeting for not making his goal and humiliated him in front of his coworkers in a discriminatory and harassing manner.

85.  Indeed, Yayahoui and Rosario were clearly aware that Mr. Stewart had missed the goal due to the fact that he was absent for around two weeks as a result of his disability-related leave.

86.  Furthermore, various other employees missed goals for a single month. This happened occasionally to employees, and they were not reprimanded in a public humiliating and harassing manner as Mr. Stewart was.

87.  For example, Sarah Whitten ("Whitten") missed her goal on multiple occasions and was not publicly reprimanded and singled out for missing her goal.

88.  Upon information and belief, Whitten is not disabled. Upon information and belief, the Company (at all times relevant to this complaint) did not regard Whitten as disabled and/or did not believe she was disabled.

89.  Additionally, in or around December 2023, Mr. Stewart was the only employee at his location who met his sales goal (but the other employees who missed goals were not publicly singled out or reprimanded in a harassing and humiliating manner for missing their goals).

90.  Mr. Stewart raised protected concerns in this meeting that being singled out in this way was unfair, as the reason he did not meet goals was because he was sick and out on an approved disability-related leave.

91.  Shortly after this harassing March 2024 meeting (during which Mr. Stewart raised protected concerns), Rosario informed Mr. Stewart that he was being suspended for allegedly having dyed hair.

92.     Concerned, Mr. Stewart informed Rosario that his hair was not dyed and was his natural color (indeed, Mr. Stewart had removed the hair dye following his write-up in January 2024 and it had been conveyed that this was no longer an issue).

93.     This was also extremely odd since numerous other employees, including numerous non-disabled, female, and/or straight employees continued to dye their hair and were not punished for it.

94.     Regardless, Rosario suspended Mr. Stewart for his alleged dyed hair, and instructed him to go home immediately.  This constituted blatantly discriminatory disparate treatment.

95.     On or around March 3, 2024, Rosario informed Mr. Stewart that he was being terminated immediately, allegedly for having dyed hair.

96.     Notably, to the extent that the Company did honestly believe that Mr. Stewart had dyed his hair, or didn't like his hair color, it is notable that the Company didn't give Mr. Stewart any opportunity to change his hair color or remove the supposed dye.

97.     As such, Mr. Stewart was involuntarily terminated on or around March 3, 2024.

98.     Upon information and belief, Mr. Stewart was the first person fired by the Company, and certainly the first person fired by his managers, for having allegedly dyed hair.  Mr. Stewart was thus treated differently and worse that the numerous other employees who had dyed hair and was fired in a clearly pretextual manner.

99.     To the extent that Mr. Stewart was terminated for having dyed hair, his hair was its natural color at the time of his termination and even if the Company somehow claimed it was not, other employees had dyed hair and were not similarly disciplined, let alone suspended and terminated, for such conduct.

100.    For example, Whitten had hair dyed dark black and was not terminated or reprimanded for it.

101.    Additionally, Carson Rucker ("Rucker"), a merchandizer for the Company, had her hair dyed red and was not terminated or reprimanded for it.

102.    Upon information and belief Rucker is not disabled. Upon information and belief, the Company (at all times relevant to this complaint) did not regard Rucker as disabled and/or did not believe he was disabled

103.    Mr. Stewart's termination took place in New York City, and, upon information and belief, the decision to fire Mr. Stewart was made and implemented in New York City.   Indeed, Mr. Stewart was in New York City when he was fired at the Company's facility  in New York City.

104.    Upon information and belief, Mr. Stewart was replaced by a non-disabled individual.

105.    Upon information and belief, Mr. Stewart was replaced by a straight woman.

106.    On June 28, 2204, Mr. Stewart timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

107.    Mr. Stewart requested a dismissal for administrative convenience from the NYSDHR which was issued on January 27, 2026.

108.    On INSERT the EEOC issued Mr. Stewart a Right to Sue letter.

109.    This lawsuit is timely filed.


**COUNT I**

**(Disability Discrimination and Failure to Accommodate in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. Defendant**

110.     Mr. Stewart incorporates all paragraphs above and below as if set forth fully herein.

111.     The Company is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

112.     Mr. Stewart suffers (and at all relevant times suffered) from ulcerative colitis and major depressive disorder.  Ulcerative colitis and major depressive disorder (both individually and collectively) are impairments that substantially limit one or more of Mr. Stewart's major life activities, including, but not limited to, eating, eliminating bodily waste, regulating his mood, sleeping, and caring for himself. Mr. Stewart's disabilities (both individually and collectively) are impairments which substantially limits the operation of a major bodily function, including, but not limited to, his digestive system functions, bowel functions, immune system, and neurological functions.  Accordingly, Mr. Stewart is (and at all relevant times was) disabled under the NYCHRL.

113.     At all relevant times, Mr. Stewart was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

114.     Mr. Stewart disclosed his disabilities to Defendant; and/or the Defendant was aware of Mr. Stewart's disabilities; and/or the Defendant regarded Mr. Stewart as disabled.

115.    Mr. Stewart requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, intermittent time off for medical leaves.

116.    The disability-related accommodations requested by Mr. Stewart did not pose an undue burden on Defendant.

117.    The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

118.    The Defendant unlawfully denied one or more of Mr. Stewart's disability-related accommodation requests, including but not limited to, his requests to work for time off through punishing him for failing to meet his numbers while out, which constituted a constructive denial of his leave requests, and terminating his employment.

119.    Defendant discriminated against Mr. Stewart due to his disabilities by subjecting Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

120.    Non-disabled employees of the Company were treated more favorably than Mr. Stewart including through not being improperly harassed, not subjected to a hostile work environment and/or by not having their employment terminated.

121.    Upon information and belief, the Company replaced Mr. Stewart with a lesser or similarly qualified, non-disabled employee.

122.    Defendant has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

123.    As a direct and proximate result of the Defendant's violations of the NYCHRL, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

124.    Mr. Stewart seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages,  interest, attorneys' fees, and costs.

## COUNT II

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Plaintiff v. Defendant**

125.    Mr. Stewart incorporates all paragraphs above and below as if set forth fully herein.

126.    At all relevant times, the Company employed four or more persons.

127.    The Company is an employer under the definition of Executive Law Article 15 ("NYSHRL").

128.     Mr. Stewart suffers (and at all relevant times suffered) from ulcerative colitis and major depressive disorder.  Ulcerative colitis and major depressive disorder (both individually and collectively) are impairments that substantially limits one or more of Mr. Stewart's major life activities, including, but not limited to, eating, eliminating bodily waste, regulating his mood, sleeping, and caring for himself. Mr. Stewart's disabilities (both individually and collectively) are impairments which substantially limits the operation of a major bodily function, including, but not limited to, his digestive system functions, bowel functions, immune system, and neurological functions.  Accordingly, Mr. Stewart is (and at all relevant times was) disabled under the NYSHRL.

129.     At all relevant times, Mr. Stewart was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

130.     Mr. Stewart disclosed his disabilities to Defendant; and/or the Defendant was aware of Mr. Stewart's disabilities; and/or the Defendant regarded Mr. Stewart as disabled.

131.     Mr. Stewart requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, intermittent time off for medical leaves.

132.     The disability-related accommodations requested by Mr. Stewart did not pose an undue burden on Defendant.

133.     The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

134.	The Defendant unlawfully denied one or more of Mr. Stewart's disability-related accommodation requests, including but not limited to, his requests to work for time off through punishing him for failing to meet his numbers while out, which constituted a constructive denial of his leave requests, and terminating his employment.

135.	Defendant discriminated against Mr. Stewart due to his disabilities by subjecting Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

136.	Non-disabled employees of the Company were treated more favorably than Mr. Stewart including through not being improperly harassed, not subjected to a hostile work environment and/or by not having their employment terminated.

137.	Upon information and belief, the Company replaced Mr. Stewart with a lesser or similarly qualified, non-disabled employee.

138.	Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Stewart and/or conduct so reckless to amount to such disregard.

139.	As a direct and proximate result of the Defendant's violations of the NYSHRL, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

140.	Mr. Stewart seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not

limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, interest, attorneys' fees, and costs.

## COUNT III

**(Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. Defendant**

141.    Mr. Stewart incorporates all paragraphs above and below as if set forth fully herein.

142.    During all relevant times, the Company was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et. seq. (hereinafter the "ADA"), because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

143.    Mr. Stewart suffers (and at all relevant times suffered) from ulcerative colitis and major depressive disorder.  Ulcerative colitis and major depressive disorder (both individually and collectively)  are impairments that substantially limits one or more of Mr. Stewart's major life activities, including, but not limited to, eating, eliminating bodily waste, regulating his mood, sleeping, and caring for himself. Mr. Stewart's disabilities (both individually and collectively) are impairments which substantially limits the operation of a major bodily function, including, but not limited to, his digestive system functions, bowel functions, immune system, and neurological functions.  Accordingly, Mr. Stewart is (and at all relevant times was) disabled under the ADA.

144.    At all relevant times, Mr. Stewart was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

145.     Mr. Stewart disclosed his disabilities to Defendant; and/or the Defendant was aware of Mr. Stewart's disabilities; and/or the Defendant regarded Mr. Stewart as disabled.

146.     Mr. Stewart requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job. These requested reasonable accommodations included, but were not limited to, intermittent time off for medical leaves.

147.     The disability-related accommodations requested by Mr. Stewart did not pose an undue burden on Defendant.

148.     The Defendant failed to engage in an interactive dialogue related to one or more of these disability-related accommodation requests.

149.     The Defendant unlawfully denied one or more of Mr. Stewart's disability-related accommodation requests, including but not limited to, his requests to work for time off through punishing him for failing to meet his numbers while out, which constituted a constructive denial of his leave requests, and terminating his employment.

150.     Defendant discriminated against Mr. Stewart due to his disabilities by subjecting Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

151.     Non-disabled employees of the Company were treated more favorably than Mr. Stewart including through not being improperly harassed, not subjected to a hostile work environment and/or by not having their employment terminated.

152.    Upon information and belief, the Company replaced Mr. Stewart with a lesser or similarly qualified, non-disabled employee.

153.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Stewart.

154.    As a direct and proximate result of the Company's violation of the ADA, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

155.    Mr. Stewart seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

**COUNT IV**

**(Sex Discrimination, Gender Identity Discrimination,  and Sexual Orientation Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. Defendant**

156.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

157.     The Defendant is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

158.     Defendant, by and through its agents, discriminated against Mr. Stewart with respect to the terms, conditions, and/or privileges of his employment, because of Mr. Stewart's sex (including failure to conform to sex-related stereotypes of masculinity), gender identity, and sexual orientation (gay).

159.     Specifically, the Defendant subjected Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

160.     Defendant has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

161.     As a direct and proximate result of the Defendant's violation of the NYCHRL, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

162.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT V

## (Sex Discrimination and Sexual Orientation Discrimination in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

## Plaintiff v. Defendant

163.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

164.    Defendant, by and through their agents, discriminated against Mr. Stewart with respect to the terms, conditions, and/or privileges of his employment, because of Mr. Stewart's sex (including failure to conform to sex-related stereotypes of masculinity), gender identity, and sexual orientation (gay).

165.    Specifically, the Defendant subjected Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential

treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart

unjustified discipline, and/or terminating Mr. Stewart's employment.

166.    Defendants have engaged in discrimination with willful or wanton negligence, or

recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to

such disregard.

167.    As a direct and proximate result of the Defendants' violation of the NYSHRL,

Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life,

and emotional damages.

168.    The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory damages

(including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for

emotional distress (including, but not limited to, damages for emotional pain, suffering,

inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees,

interest, and costs.

## COUNT VI

**(Interference with, and Retaliation for Exercising, Rights Under the Family and Medical**

**Leave Act – 29 U.S.C. § 2615)**

**Plaintiff v. Defendant**

169.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

170.    The Defendant was engaged in an industry affecting commerce.

171.     At all relevant times, the Defendant employed 50 or more employees for 20 or more calendar weeks in the current and/or proceeding calendar years.

172.     As such, the Defendant an employer under the FMLA.

173.     In addition, the Defendant employed 50 or more employees within 75 miles of the worksite at which Mr. Stewart worked.

174.     Mr. Stewart was an eligible employee under the FMLA because at all relevant times from January 17, 2024 on he had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.

175.     Mr. Stewart suffered from one or more serious health conditions, including ulcerative colitis and major depressive disorder which required inpatient care and/or continuing care from a medical provider.

176.     Mr. Stewart requested FMLA leave including in the form of both intermittent and continuous FMLA leave, related to the need to take time off for his own serious health conditions.

177.     The Defendant interfered with, restrained, and/or denied the exercise of, or the attempted exercise of, Mr. Stewart's rights under the FMLA.  For example, the Defendant, including through their agents, and punished Mr. Stewart (including through humiliating him for not making goal) for not working during his FMLA leave, which constituted a constructive denial of the leave time and also retaliation, failed to restore Mr. Stewart to his position at the end of his leave, and terminated Mr. Stewart's employment rather than allow him to return from continuous FMLA leave.

178.     Additionally, Mr. Stewart's leave was used as a negative factor in Defendant's decision to terminate him.

179.     In doing so, the Defendant unlawfully denied and otherwise interfered with Mr. Stewart's ability to utilize leave under the FMLA.

180.     Defendant, including by and through its agents, retaliated and/or discriminated against Mr. Stewart for requesting and/or utilizing FMLA leave by subjecting Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

181.     Defendant's actions were willful and in bad faith.

182.     As a direct and proximate result of the Defendant's violation of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

183.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

**COUNT VII**

**(Retaliation for Engaging in Protected Activity in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. Defendant**

184.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

185.     Mr. Stewart engaged in protected activity under the NYCHRL, including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on his disability, sex, sexual orientation, and gender identity;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Stewart's disability status, sex, sexual orientation, and gender identity; (iii) requesting and/or utilizing reasonable accommodations; and/or (iv) protesting the failure to provide reasonable accommodations.

186.     Defendant discriminated against and/or retaliated against Mr. Stewart for engaging in activity protected under the NYCHRL, by subjecting Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

187.     Defendant has engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

188.     As a direct and proximate result of the Defendant's violations of the NYCHRL, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

189.     Mr. Stewart seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, emotional distress damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and cost

## COUNT VIII

## (Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

## Plaintiff v. Defendant

190.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

191.     Mr. Stewart engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on his disability, sex, sexual orientation, and gender identity;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Stewart's disability status, sex, sexual orientation, and

gender identity; (iii) requesting and/or utilizing reasonable accommodations; and/or (iv) protesting the failure to provide reasonable accommodations.

192.    Defendant discriminated against and/or retaliated against Mr. Stewart for engaging in activity protected under the NYSHRL, by subjecting Mr. Stewart to adverse employment actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

193.    Defendant acted with willful and/or reckless disregard to the state protected rights of Mr. Stewart.

194.    As a direct and proximate result of the Defendant's violation of the NYSHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

195.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IX

### (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)
### Plaintiff v. Defendant

196.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

197.    Mr. Stewart engaged in protected activity under the ADA, including, but not limited to, (1) by opposing, expressing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on his disability;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Stewart's disability status; (iii) requesting and/or utilizing reasonable accommodations; and/or (iv) protesting the failure to provide reasonable accommodations .

198.    The Company discriminated against and/or retaliated against Mr. Stewart for engaging in activities protected under the ADA, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

199.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Stewart's exercising of, or enjoyment of, one or more rights granted by the ADA.

200.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Stewart.

201.    As a direct and proximate result of the Company's violation of the ADA, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

202.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT X

**(Retaliation for Disclosing to One or More Supervisors Policies or Practices of the Company Mr. Stewart Reasonably Believed Violated a Law, Rule, or Regulation, in Violation of New York Labor Law, Section 740)**

**Plaintiff v. Defendant**

203.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

204.    Mr. Stewart disclosed to one or more supervisors policies or practices he reasonably believed violated the NYCHRL, NYSHRL, and the ADA including discriminating against him due to his disability, denying him accommodations for his disabilities, retaliating against him for engaging in protected activity, harassing him and subjecting him to a hostile work environment based on his protected classes, interference with FMLA, retaliation for using FMLA, and wrongfully terminating him based on his protected classes.

205.    Defendant discriminated against and/or retaliated against Mr. Stewart for disclosing policies or practices he reasonably believed violated the law to one or more supervisors by subjecting Mr. Stewart to adverse employment actions, including, but not limited to, subjecting

Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

206. Defendant acted with willful and/or reckless disregard to the state protected rights of Mr. Stewart.

207. As a direct and proximate result of the Defendant's violation of the NY Labor Law Section 740, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

208. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life),  attorneys' fees, interest, and costs.

## COUNT XI

### (Retaliation in violation of N.Y. Lab. Law § 215)

### Plaintiff v. Defendant

209. The Plaintiff incorporates all paragraphs above as if set forth fully herein.

210. The Plaintiff suffered from one or more serious health conditions which qualified for leave protected under federal, local, and/or state law.

211.    The Plaintiff notified the Defendants that he needed to take a legally protected absence pursuant to federal, local and/or state law.

212.    Plaintiff had the right to take a leave was protected under New York law, including, but not limited to, the New York paid sick leave law and the FMLA.

213.    The Plaintiff took one or more legally protected leaves and/or absences which were protected pursuant to federal, state, and/or local law.

214.    The Defendant retaliated and/or discriminated against the Plaintiff for his legally protected absence pursuant to federal, local, and/or state law by subjecting Mr. Stewart to adverse actions, including, but not limited to, subjecting Mr. Stewart to a harassing and otherwise hostile work environment (including harassing comments about his appearance), subjecting Mr. Stewart to differential treatment (including forbidding him to wear makeup or dye his hair), issuing Mr. Stewart unjustified discipline, and/or terminating Mr. Stewart's employment.

215.    As a direct and proximate result of the Defendant's violation of N.Y. Lab. Law § 215, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, reinstatement, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

216.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life),  attorneys' fees, interest, and costs.

## COUNT XII

### (Failure to Pay Wages and Overtime in Violation of New York Labor Law - NY Labor Ch. 31, Art. 6)

### Plaintiff v. Defendant

217.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

218.    Defendant is an employer as defined under the New York Labor Law, NY Labor Ch. 31, Art. 6 § 190.

219.    Defendant employed Mr. Stewart.

220.    Mr. Stewart was paid on an hourly basis and was entitled to overtime pay when he worked over 40 hours a week (he was a non-exempt employee).

221.    In violation of New York Labor Law Ch. 31, Article 6 § 191, Ch. 31, Article 6 § 191, Defendant routinely failed to pay Mr. Stewart all wages that he was owed for the hours that he worked (failing both to pay him minimum wage for those hours and failing to provide him overtime pay).

222.    The violation of New York Labor Law, Ch. 31, Article 6 § 191 by the Defendant was knowing, willful, and made with a reckless disregard of the rights of Mr. Stewart and/or conduct so reckless to amount to such disregard.

223.    As a direct and proximate result of the violation of New York Labor Law, Ch. 31, Article 6 § 191 by Defendants, Mr. Stewart has suffered and continues to suffer damages, including, but not limited to lost wages.

224.    Mr. Stewart seeks all damages to which he is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation, interest on the lost wages and the liquidated damages, attorneys' fees, and costs

WHEREFORE, the plaintiff, Darrin Stewart, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for his emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff his lost and unpaid wages for all hours worked, and time and a half overtime wages.;

H.  Award the Plaintiff liquidated damages for both unpaid wages and for damages related to willful violations of the FMLA;

I.  Award the Plaintiff punitive damages;

J.  Reinstate and restore Plaintiff to his position at his former seniority, responsibilities, and pay level;

K.  Award the Plaintiff his reasonable attorney's fees;

L.  Award the Plaintiff interest and costs;

M.  Award the Plaintiff all other damages to which he is entitled; and

N.  Grant such further relief as is just and equitable.

Respectfully Submitted,

DARRIN STEWART

By his attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date: 7/9/2026                                     By:      /s/Timothy Brock_____

Benjamin J. Wyatt (#5604590)
BWyatt@Wyattlegalservices.com

Timothy Brock (#5614151)
Tbrock@wyattlegalservices.com

Main Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
69 State Street, 13th Floor
Albany, NY 12207